G. E. LEACH et al. v. C. F. LINDE.

*County Commissioners—Jury—Term of Court—Judge—Code—*
*Issues — Evidence — Damages — False Representations—In-*
*struction.*

1. Where the statute in express terms gives the County Commissioners power to provide a jury for two weeks, and then afterwards the term of the Court is lengthened to three weeks, they have power, by implication, to provide a jury for the third week also.

2. Where, upon failure of the County Commissioners to draw a jury for such third week, the Court orders the same to be drawn as prescribed by section 1732 of *The Code,* such jury is legal.

3. When the issues raised by the pleadings are comprehensive enough to allow the introduction of all the evidence material to the case, there is no ground of exception.

4. In an action for damages for having, by false representations, induced the plaintiffs to accept a certain ice machine and bonds representing the indebtedness of its owners thereon, the Court refused to instruct the jury that if the plaintiffs could, in reasonable time and with reasonable outlay, put the machine in the condition required by the contract, they could not recover as damages the amount they paid for the bonds: *Held,* no error.

5. The Court should not give instructions when there is no evidence to which they are pertinent.

This was a CIVIL ACTION, tried at October Term, 1890, of WAKE Superior Court, before *Boykin, J.*

This action was brought to recover damages of the defendant for having induced the plaintiffs to accept a lease of a certain ice plant and machinery and purchase certain bonds, by false and fraudulent representations made by defendant, as set out in the complaint.

Issues were submitted by the Court, as follows:

1. At the time of the purchase of the bonds and acceptance of the lease by plaintiffs, did defendant falsely and fraudulently represent to plaintiffs that the plant and ice

machinery, and every essential part thereof, was in good repair and condition, and that it would produce fifteen tons of ice per day at a cost of not more than $2.25 per ton?

2. Did defendant know said representation to be false?

3. Were the plaintiffs induced by said representation to purchase said bonds and accept said lease?

4. What damage, if any, are plaintiffs entitled to recover?

The following prayers for instructions were refused, and defendant excepted:

1. If the plant mentioned in the complaint could have been, in a reasonable time, with a reasonable outlay of money, so repaired and improved by the plaintiffs, after they took possession of the same, as to place it in the condition required by the contract, then the plaintiffs are not entitled to recover as damages the $4,000 paid for bonds, as alleged in said complaint.

2. If the plant mentioned in the complaint could have been, within a reasonable time, and with the outlay of $2,400 mentioned in this complaint, so repaired and improved by the plaintiffs, after they took possession of the same, as to place it in the condition required by their contract of October 6th, 1888, set forth in the complaint, then the plaintiffs are not entitled to recover as damages the $4,000 paid for bonds, as alleged in said complaint.

10. Of the damages claimed by the plaintiffs, to-wit, the sum paid for the bonds and the sum expended in repairing the plant, they are entitled to recover only such sum as was necessary to put the plant in good repair and make it capable of producing ice as required by the contract set forth in the complaint.

The defendant tendered the following issues:

1. Did the defendant make to the plaintiffs the representations alleged in the sixth article of the complaint?

2. If yes, were said representations false?

3. If false, were they false within the knowledge of the defendant?

4. Did the plaintiffs in accepting the lease and advancing the four thousand dollars for bonds, as alleged in the complaint, rely upon said representations?

5. If yes, was such reliance reasonable?

6. What damages, if any, hath the plaintiffs sustained?

The Court refused to submit these issues, and defendants excepted.

The plaintiff G. E. Leach was introduced, and testified as follows: "The contract between plaintiffs and Linde & Lawrence was made in New York; Linde & Lawrence represented that they owned nine hundred and eighty shares of the capital stock of the Raleigh Transparent Ice Company, a corporation existing under the laws of the State of New Jersey, the entire capital stock being one thousand shares, and they, Linde & Lawrence, agreed to put this plant, belonging to said corporation in the city of Raleigh, in good repair." The plaintiffs offered to show by the witness that the contract of the 6th day of October, 1888, was drawn by one Clinch, the attorney for Linde & Lawrence, and executed in the office of said attorney in New York City, for the purpose of showing that it was signed in plaintiff's presence, he being present in said attorney's office when all the parties signed the said contract, and further, for the purpose of showing that Clinch, the attorney and subscribing witness, was a citizen of New York. The defendant objected, the Court overruled the objection, and defendant excepted. This was when the said contract was offered in evidence—the witness Leach being upon the stand—and the Court allowed the witness to testify that the contract was executed by all the parties in the office of Clinch in the city of New York, and that Clinch, the subscribing witness, was a citizen and resident of New York, and was not present at the trial.

*Messrs. R. H. Battle, S. F. Mordecai* and *Armistead Jones,* for plaintiffs.

*Mr. G. V. Strong,* for defendant.

MERRIMON, C. J.: The statute (Acts 1885, ch. 180) prescribes, among other things, that certain of the terms of the Superior Court of the County of Wake shall continue for three weeks, "to be for the trial of civil business alone." These terms are to be devoted to the proper disposition of all kinds of civil actions and proceedings pending in the Court, whether they be such as require trials by jury or not. Hence, the statute just cited, taken as it must be, in connection with the other statute (*The Code,* ch. 39, in respect to "jurors," especially sections 1727, 1732) contemplates and intends that a jury shall be provided for each week of the terms of the Court to which reference is thus made. The third week of such terms, as well as the two preceding weeks thereof, is devoted to the disposition of civil business—actions that generally require jury trials. How can such trials be had without a jury? Is it not obvious that the statute creating these terms intended that each week of them should have provided for it a jury, drawn in the regular method prescribed? In extending the terms of the Courts for such purpose, by plain implication the duty of the County Commissioners was correspondingly enlarged so as to require them to provide regularly a jury for the third week of such terms.

It is true that the statute (*The Code,* § 1727) provides generally, in terms, for drawing for each week of the terms of the Superior Courts lasting two weeks, but its chief and leading purpose is to provide juries for the regular terms of the Courts, and a jury for each week of them. At the time the general statute in respect to juries was first enacted, the regular terms of the Superior Courts did not extend beyond two weeks, and hence the County Commissioners were required only to provide a jury for each week of a term of

that length.    Afterwards, when the terms of some of the Courts were extended to three weeks, as in the case of the county of Wake, the statute in respect to juries was not, in terms, in pertinent respects, correspondingly modified, but it was in effect.    The two statutes are, in important respects, *in pari materia*, and must be taken and treated together. That in regard to jurors is intended, in large measure, to effectuate that in respect to Courts.    Hence, when the statute first above cited extended the terms of the Court one week, it had the effect to so modify the statute in respect to juries as to require a jury to be provided for that week in the regular method.    In the nature of the matter, and in view of the purpose of the law, it would be impracticable, unreasonable and absurd to extend the terms of the Court one week for general purposes and provide no jury for that week.

It appears in this case that the County Commissioners, for some cause, failed to draw a jury for the third week of the term at which the action was tried.    The Court directed that a jury for the same be drawn as prescribed and allowed by the statute (*The Code*, § 1732), and a jury was so drawn and summoned accordingly.    A jury thus drawn was not illegal; it was such as the law allowed, and to be so treated for all proper purposes.    It is true the statute provides that a jury may be so drawn "if the Commissioners, for any cause, fail to draw a jury for any term of the Superior Court, regular or special," etc.    Here the Commissioners provided juries for the two weeks of the term, but not for the third week. Clearly, such failure came within the mischief provided against by the section of the statute just cited.    The object of the statute is to provide, in an orderly method, unobjectionable jurors for the Courts.

The defendant's challenge to the array cannot, therefore, be allowed.    Hence, his first exception is groundless.

The issues of fact submitted to the jury were clearly raised by allegations of the complaint broadly denied in the

answer.   They were comprehensive, and afforded the defend-
ant ample opportunity to introduce on the trial all evidence
material for his defence and to raise all questions of law in
respect to the materiality, relevance and application of the
same, and like opportunity as to the evidence of the plain-
tiffs.   The verdict of the jury upon them would settle with
sufficient fullness the material controverted, constituent facts.
The issues tendered by the defendant might have served the
like purpose, but scarcely so well, because they were unnec-
essarily more in number and subdivided the material inqui-
ries to be made.   This always tends, more or less, to confuse
the jury.   So the second exception is without force.

The evidence objected to and embraced by the third
exception was of slight importance, not such as in its nature
would prejudice the defendant.   It tended, in some degree,
to identify the contract alleged and set forth in the com-
plaint, to show that the defendant had knowledge of its con-
tents and meaning, and .to account for the absence of the
subscribing witness thereto.   This exception has no substan-
tial merit.

The defendant was not entitled to have the first, second
and tenth special instructions asked for by him given to
the jury, because the plaintiffs, in substance, alleged, and
there was evidence tending to prove, that they were induced
to lease the ice manufactory mentioned, and in that connec-
tion to pay to the defendant four thousand dollars for certain
bonds of little or no value by the false and fraudulent rep-
resentations made by him to them.   The plaintiffs allege
that the defendant falsely and fraudulently represented to
them that the ice manufactory was a good one—in good
repair—that it was capable of producing a certain quantity
of ice per day at a cost not exceding a specified sum; that
the ice plant was of great value—forty thousand dollars.
Hence, they believed that the bonds, whose value depended

LEACH v. LINDE.

upon the facts thus falsely represented to exist, were of substantial value, and were induced to buy them.   It is alleged that the defendant knew that such representations made by him were false, and that he fraudulently induced the plaintiffs to take the lease and pay four thousand dollars for the bonds they received at his instance and solicitation, and for his benefit.   If such allegations were true, the plaintiffs were entitled to recover damages upon the ground that they were, under the circumstances, fraudulently induced by the defendant to buy the bonds, which he represented to be of great value, whereas in fact they were of no substantial value. The damage, in such respect, was a direct result of the fraud alleged, and the plaintiffs were entitled to recover on account of the same.

It is stated in the case that the evidence sent up was all that bore upon the special instructions asked for by the defendant.   We have examined it carefully, and are of opinion that there was no evidence that could warrant the Court in giving the third, fourth and fifth special instructions asked for.   No part of the evidence, nor the whole of it together, accepted as true, in any reasonable view of it, was sufficient to prove that the plaintiffs "knew that the said plant (the ice manufactory) did not come up to the representations made by this defendant," nor that the plaintiffs would have taken the lease if they had known that the representations made by the defendant were false.

The Court should not give instructions, special or otherwise, in the absence of evidence to which they are pertinent, and that warrant them.   It would be error to do so, if they prejudiced the adverse party.

The Court gave the eighth and ninth special instructions asked for, substantially and sufficiently, in its charge to the jury, to which there was no exception.   Indeed, it was very fair and sufficiently explicit.   It directed the attention of

the jury particularly to the issues, their nature, and the evidence submitted to them.   We are unable to discover that the defendant was prejudiced, as he complained, by any instructions the Court gave or failed to give them.

Judgment affirmed.